## THE ILLINOIS and THE GLADISFEN.

### THE MABEL JORDAN v. THE ILLINOIS and THE GLADISFEN.

(District Court, E. D. Pennsylvania. January 2, 1895.)

No. 61.

COLLISION—EXCESSIVE SPEED IN CROWDED CHANNEL.

A steamship was running at full speed down a narrow and crowded channel, the attention of her officers being absorbed in the effort to pass another vessel; and when libelant's schooner was discovered, in the channel ahead of her, no effort was made to avoid collision until it became plain that she could not pass on either side of the schooner, when the order for full speed astern was given, but too late to avoid collision. *Held*, that the steamship was in fault, and responsible for the collision.

This was a libel by the owners of the schooner Mabel Jordan against the steamship Illinois for damages for collision. The Illinois brought in the tug Gladisfen as co-respondent.

John F. Lewis, for the Mabel Jordan.
J. Rodman Paul and N. Dubois Miller, for the Illinois.
Henry R. Edmunds, for the Gladisfen.

BUTLER, District Judge. The schooner, laden with coal, was taken in tow by the tug Gladisfen at Greenwich Piers, on the Delaware river, June 7, 1893, as she lay in dock, and drawn out into the river, to proceed downwards. The tide was running up, and as the schooner came out into the river it carried her upwards and eastwards, as the tug passed downwards. At this time the Illinois, coming down the river, ran into and sunk her. The Illinois, on being libeled for the loss, had the Gladisfen brought in as co-respondent.

Did the collision result from fault of the Illinois, or of the Gladisfen or of both?

1. Was the Illinois in fault? Several faults are charged against her—substantially that she was running too fast, that she had not a proper lookout, and that she did not make proper efforts to keep off when the libelant was first seen.—The channel is narrow and crowded. The piers at its side, with vessels and tows passing in and out, rendered its navigation even more difficult. It was

therefore the duty of the Illinois to run slowly, and maintain a very vigilant lookout.

While the testimony is conflicting the weight of it justifies a conclusion, I think, that she did neither. I believe it also justifies a conclusion that she failed to make proper effort to avoid a collision when the libelant was first seen.

She did not hear the Gladisfen's signals, did not see her until the danger was imminent, and did not then take immediate measures to keep off.

That the signals were sounded is proved beyond doubt. They were heard and heeded by others, who were nearly, if not quite, as far away as the Illinois. Nor did she see either the tug or tow as early as she should. The testimony satisfies me she could and should have seen them materially earlier. I think this failure to hear and see was because she allowed her attention to be absorbed by an effort to pass a vessel in her front at that time. Not only was her attention concentrated on this object, but in making the effort she so increased her speed that when the libelant was seen the collision was possibly inevitable. It is true the log does not show that the order for "full speed" was obeyed; other evidence however seems to leave little doubt of it. The collision occurred so soon after the order was given that it is not surprising the entry does not appear. ' Why should the order have been disobeyed?

It was given long enough before the order to reverse to have been executed. The increase of speed was necessary to the object in view; and the engineer would naturally obey the order immediately. Disinterested witnesses say she was running fast, and give reasons for saying so. The character and effect of the blow support this view. I am not unmindful of what her master, and others on board, say on the subject, but the preponderance of testimony is against them. The fact that her first order, with a view to escape, was "Full speed astern," is of itself evidence, that she was not proceeding with proper care. The collision was then imminent, or this order would not have been given. Such danger could not have arisen if she had proceeded slowly and with due caution. Why did she approach so near—what excuse is there for it? She says the schooner's hawser parted and allowed her to drift off suddenly; but the testimony disproves this. The hawser was cut just as the collision occurred, for prudential reasons. She further alleges that the Gladisfen and her tow suddenly emerged from the dock, almost immediately in her front; but this allegation is not justified by the proofs. The Gladisfen had been out in plain view for several minutes, otherwise the tow could not have been over in the channel where the collision occurred.

Not only was the Illinois running too fast, and the schooner not seen as early as it should have been, as before stated, but I believe no measures were immediately taken to keep off when she was seen. The answer inferentially admits this when it says, "As soon as it was seen that the schooner was going so slowly that she would continue in mid-channel, and that it would be impossible to get either to the eastward or westward, the engines were put full speed astern." Thus it appears that the schooner was observed

without any order whatever being given while calculation was made respecting the chances of passing without diminution of speed or change of course, until the accident became so imminent as to call for the order "Full speed astern." I incline to believe that immediate attention to her duty on first sight of the schooner would have avoided the accident. Her helm would have responded quickly in the state of the tide, and a very short distance would have served to change her head and secure safety.

The attempt to pass the vessel in her way, shortly before the accident, which required "full speed," in the narrow, crowded channel where vessels and tows were passing in and out at the piers, shows a careless disposition and was well calculated to produce the result which followed.

It is a significant fact that the people on board the schooner, who are disinterested and were well placed to see what occurred, all attribute the accident to fault of the Illinois, and that her master proceeded, and still presses his claim for compensation against the latter vessel alone.

2. Was the Gladisfen also in fault? The Illinois accuses her and complains, principally, that she ran out into the channel without signaling, with a hawser of improper length, and did not take necessary measures to see whether the channel was clear. It was her duty to signal and observe proper care to see that the way was open for passing out with safety. That she did signal as she passed through the dock and after getting outside is, as before stated, fully proved. She gave ample warning which others heard and heeded. She had a lookout well located forward. It is said she should have had a man on the end of the pier before passing out. Possibly this is so; but the question is not important here, inasmuch as her lookout and others testify that the opportunity of seeing up and down the river from his station was better from the pier, after the vessel passed that point, and that when she got into the river the Illinois was not within view. Finding nothing in her way it was her duty to proceed, which she seems to have done in the customary manner. Her hawser was of the usual length, and she seems to have been blameless of any fault tending to the accident.

While I have read the voluminous testimony with care, I have not thought worth while to cite and analyze it here, nor to discuss the case at length. I have sought to do little more than state conclusions.